**No. 23-3100**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

**VOTEAMERICA and VOTER PARTICIPATION CENTER,**
Plaintiff-Appellees,

v.

**SCOTT SCHWAB,** *et al.,*
Defendant-Appellants.

_____

On Appeal from the United States District Court for the District of Kansas
Case No. 2:21-CV-02253

_____

*AMICUS CURIAE* **BRIEF**
**OF PUBLIC INTEREST LEGAL FOUNDATION**
**IN SUPPORT OF APPELLANTS AND REVERSAL**

_____

Charlotte M. Davis*
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
*Counsel for Amicus*
*admission to the 10th Circuit Court of Appeals pending

Dated: August 1, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for amicus states that the Public Interest Legal Foundation is a non-profit organization.  It has no stock or parent corporation.  As such, no public company owns 10% or more of its stock.

# TABLE OF CONTENTS

**PAGE**

CORPORATE DISCLOSURE STATEMENT…..………...……………………ii

TABLE OF CONTENTS………………………….…………..………………..iii

TABLE OF CITATIONS……………………………………………..………...iv

INTERESTS OF THE AMICUS……………………..……………………....1

SUMMARY OF THE ARGUMENT……...…………………………………….2

ARGUMENT…………………………………………………………………….3

    I.       Filling out the advance ballot application is not speech, and to the extent it is, it is not the speech of Plaintiffs…….…………….5

    II.     Even if Plaintiffs' actions were to be considered speech, the First Amendment does not guarantee the right of individuals "to select what they believe to be the most effective means" to convey their message…………………………………………………9

CONCLUSION…………………………………………………………...14

CERTIFICATE OF COMPLIANCE…………………………………….....…15

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS………………………………………………………...……16

CERTIFICATE OF SERVICE …………………………………….…...............17

# TABLE OF CITATIONS

**PAGE**

## CASES

*303 Creative LLC v. Elenis*,
    2023 U.S. LEXIS 2794, 143 S.Ct. 2298 (2023)…………..……....……….7-9

*Bass v. Richards*,
    308 F.3d 1081 (10th Cir. 2002)……………….....………………….………….6

*Buckley v. American Constitutional Law Foundation, Inc.*,
    525 U.S. 182 (1999)……………………………..…………………..……….6-7

*Chandler v. City of Arvada*,
    292 F.3d 1236 (10th Cir. 2002)……………………..…………..……….4-5

*Duda v. Elder*,
    7 F.4th 899 (10th Cir. 2021)……………………………………..……..…….5

*Lichenstein v. Hargett*,
    489 F.Supp.3d 742 (M.D. Tenn. 2020)……………..……………..…….…...13

*Meyer v. Grant*,
    486 U.S. 414 (1988)……………………………………………….4-5, 6-7, 9-12

*Project Vote v. Kelly*,
    805 F.Supp.2d 152 (W.D. Pa. 2011)…………..…...………………..…….11-12

*Republican Party v. King*,
    741 F.3d 1089 (10th Cir. 2013)……………………….…..………………….6

*Sheldon v. Grimes*,
    18 F.Supp.3d 854 (E.D. Ky. 2014)…………..……….…………..…………13

*Storer v. Brown*,
    451 U.S. 724 (1974)…………..………………..…………………..10-11

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997)…………..………………..……………………...10

*Voting for Am., Inc. v. Andrade*,
    488 F.App'x 890 (5th Cir. 2012)…………..………………….……...……12-13

## OTHER AUTHORITIES

Sunstein, Cass, *Free Speech Now*, 59 U. Chi. L. Rev. 255 (Winter 1992)……...…6

**INTERESTS OF AMICUS**

The Public Interest Legal Foundation (the "Foundation") is a non-partisan, public interest organization whose mission includes working to protect the fundamental right of citizens to vote and preserving election integrity across the country. The Foundation has sought to advance the public's interest in having elections free from unconstitutional burdens and discrimination. At the state level, this is best done by ensuring that state laws enacted by each state's legislative branch are constitutional. It is also done by monitoring judicial actions that intrude into the delegated responsibilities of the legislative branch. This case is of interest to the Foundation as it is concerned with protecting the sanctity and integrity of American elections and preserving the proper Constitutional balance of state control over elections.

The Foundation has extensive experience in election law litigation and is involved in such cases throughout the nation. The Foundation has filed *amicus curiae* briefs in cases on various election-related issues, and been involved in cases determining the legality and constitutionality of state election practices. *See, e.g.*, Brief of Public Interest Legal Foundation as *Amicus Curiae* in Support of Appellants, *Merrill v. Milligan*, 2022 U.S. S. Ct. Briefs Lexis 1410 (2022); Brief of Public Interest Legal Foundation as *Amicus Curiae* in Support of Appellants, *Rucho v. Common Cause*, Case No. 18-422, 139 S.Ct. 2484 (2019); Brief of Public Interest

Legal Foundation as *Amicus Curiae* in Support of Appellees, *Lichtenstein, et al., v. Hargett*, *et al.*, Case No. 22-5028, *Albence v. Higgin*, Case No. 342, 2022 Del. LEXIS 377, 2022 WL 17591864 (Del. 2022); *Pub. Interest Legal Found., Inc. v. Bellows*, Case No. 1:20-cv-00061, U.S. Dist. LEXIS 52315, 2023 WL 2663827 (D. Me. 2023).

All parties have consented to the filing of this brief.  No counsel for a party authored this brief in whole or part, and no person other than amicus or their counsel has made a monetary contribution intended to fund the preparation or submission of the brief.

## SUMMARY OF ARGUMENT

The District Court's ruling that Plaintiffs have a "First Amendment right to select what it believes to be the most effective means of advocating its message" is incorrect and should be reversed.  App. Vol. III at 655 (internal quotations and brackets removed).  Filling in a government form is not core political speech, and this legal conclusion expands the First Amendment into protection of actions, not speech.  Completing a form is an act, not political speech. The District Court's expansion to protect acts under the First Amendment is misguided and improperly applies the controlling jurisprudence.  This Court should reverse.

## ARGUMENT

The District Court's reliance on effectiveness as an element of the First Amendment is misguided. The First Amendment does not confer a right to achieve the speaker's broad political goals. Effectiveness is simply not a right that the First Amendment guarantees. A speaker's declaration that he believes one act or method of speech would be more effective at communicating his message than another does not grant more protection for the purportedly effective method.

Yet Plaintiffs argue that the First Amendment protects an action simply because it most effectively accomplishes their goals. The complaint elevates effectiveness as included in the bundle of rights in the First Amendment:

> HB 2332 prohibits Plaintiffs from employing their most effective means of persuading voters to engage in the democratic process: mailing advance mail ballot applications to registered Kansas voters, complete with a pre-addressed return envelope, and personalizing those applications by prefilling the individual's name and address information.

App. Vol. I at 26-27. Plaintiffs reference this purported effectiveness element of the First Amendment no fewer than 11 times in the Complaint as it relates to the pre-filled advance ballot application. *See* App. Vol. I at 26-30, 34, 41, 45-46, 48, 50-51, 53.[1] In addition to arguing that pre-filling the advance ballot application is the "most effective form of communicating with and assisting Kansas voters," App. Vol. I at

---

[1] Pursuant to 10th Cir. R. 28.1, all references to the record are by volume and page number. However, for this citation, paragraph numbers may be more helpful. The relevant paragraph numbers are: ¶¶ 1, 6, 10, 28, 50, 69, 71, 82, 89, 99, and 102.

34, Plaintiffs also describe sending the pre-filled application as their "preferred" method, App. Vol. I at 40-41, 53. Plaintiffs extrapolate on their argument in their motion for summary judgment, claiming that "the Personalized Application Prohibition criminally prohibits what Plaintiff believes is the most effective means of conveying its pro-advance mail voting message." App. Vol. II at 238.

The District Court agreed with Plaintiffs' argument that they have a "right to advocate its cause through the means it believes to be most effective." App. Vol. III at 655. First, the District Court made a finding of fact that Voter Participation Center "believes sending personalized advance mail ballot applications 'increases voter engagement.'" App. Vol. III at 632 (noting in footnote 4 that the District Court did not make a finding that the pre-filled postcards did actually increase engagement – but only that plaintiff believed it did). Second, the District Court cited *Meyer v. Grant*, 486 U.S. 414 (1988), and *Chandler v. City of Arvada*, 292 F.3d 1236 (10th Cir. 2002), that the Supreme Court "recogniz[ed] First Amendment protection for what plaintiff 'believes' to be its most effective means of communication." App. Vol. III at 655. Therefore, the District Court concluded, while Plaintiffs do not have a "right to a successful program," Plaintiffs do have a "First Amendment right to 'select what [it] believe[s] to be the most effective means' of advocating its message." *Id.*

4

But the District Court's second premise is flawed. Neither *Meyer* nor *Chandler*[2] support the proposition that the First Amendment guarantees the ability to act in a manner believed to be the most effective to one's mission. The two cases involved a different factual circumstance – a petition circulation advocating for political change – and neither case offer any indication that their ruling was to apply to anything beyond core political speech.

## I.    FILLING OUT THE ADVANCE BALLOT APPLICATION IS NOT SPEECH, AND TO THE EXTENT IT IS, IT IS NOT THE SPEECH OF PLAINTIFFS.

The District Court held that pre-filling an advance ballot application for someone else was "core political speech," and accordingly applied strict scrutiny to analyze the restrictions. App. Vol. III at 654. But filling in someone's name and address on a government form lacks any expressive content or viewpoint.

For sure, this Court has held that some activities are protected political speech. This Court has found a sergeant's off-duty support of a sheriff candidate to be protected political speech. *See Duda v. Elder*, 7 F.4th 899 (10th Cir. 2021). *See*

---

[2] In *Chandler,* the Tenth Circuit had to determine whether the First Amendment was implicated by an ordinance that limited petitions circulated within the city of Arvada to be circulated only by Arvada residents and include an affidavit from the circulator containing the Arvada address of the circulator. *Chandler*, 292 F.3d at 1239-40. *Chandler* quotes directly from *Meyer* in its analysis of the First Amendment's requirement to allow the "most effective means", and offers no independent analysis or language on the matter.

*also Bass v. Richards*, 308 F.3d 1081 (10th Cir. 2002) (finding a deputy's stated preference for and association with a rival sheriff candidate is protected political speech). This Court also held that contributions to political committees are political speech. *See Republican Party v. King*, 741 F.3d 1089 (10th Cir. 2013). Political speech is traditionally "both intended and received as a contribution to public deliberation about some issue." Sunstein, Cass, *Free Speech Now*, 59 U. CHI. L. REV. 255, 304 (Winter 1992).

The District Court cites *Meyer v. Grant*, 486 U.S. 414 (1988), and *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999), for support that "sending personalized applications constitutes 'interactive communication concerning political change.'" App. Vol. III at 654 (citing *Meyer*, 486 U.S. at 422). The District Court reasoned that "plaintiff here expresses its political view that the recipient of the personalized mail ballot application should vote by advance mail." App. Vol. III at 656.

But Plaintiffs here are not attempting political change by sending out pre-filled advance ballot applications, or at least they have not so claimed. Their proffered goal is merely to encourage people to vote. In *Meyer* and *Buckley*, the plaintiffs sought signatures on a referendum petition to advance a particular issue toward potential passage. Those cases involved citizens advancing a specific grassroot instrument for political changes. As *Meyer* points out,

> The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change. Although a petition circulator may not have to persuade potential signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate. This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it. Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as "core political speech."

*Meyer*, 486 U.S. at 421-422.

Instead, here Plaintiffs are pre-populating government forms for others to increase civic engagement.  They are encouraging the personal use of a particular voting method – not seeking broad scale political change to voting methods.  There is no back and forth discussion of a political issue, and there is no "contribution to public deliberation" about an issue in the filling in of a name and address.  Sunstein, 59 U. Chi. L. Rev. at 304.  Additionally, Plaintiffs' pre-population is an act, not speech.  If there is any speech in the pre-population, it is unappealing and bland in the extreme, as it is only the recipient's name and address.  Plaintiffs are acting more like robotic autofill functionaries for someone they don't know.  This is hardly the stuff of First Amendment protections.

The Supreme Court of the United States recently had something to say about the question here. At oral argument in *303 Creative LLC v. Elenis*, justices questioned a website designer's counsel about the compelled speech implications of

a hypothetical "plug-and-play website" where the website is already designed in terms of layout and graphics, and the customer merely plugs in the customer's name and information to be displayed. 2023 U.S. LEXIS 2794, 143 S. Ct. 2298 (2023), oral argument transcript *found online at* www.supremecourt.gov/ oral_arguments/argument_transcripts/2022/21-476_n7io.pdf. In the hypothetical presented, the website designer designed the format of the website, and the customer filled in information about themselves. In today's case, the government designed the form, and Plaintiffs fill in information about someone else, for someone else.

The opinion in *303 Creative LLC v. Elenis* did not ultimately include a discussion of whether such a rote filling in of information would be considered speech, but the United States Supreme Court did explain what is speech and how to define whose speech is whose:

> We further agree with the Tenth Circuit that the wedding websites Ms. Smith seeks to create involve *her* speech. 6 F.4th, at 1181, and n. 5. Again, the parties' stipulations lead the way to that conclusion. *See* App. to Pet. for Cert. 181a, 187a. As the parties have described it, Ms. Smith intends to "ve[t]" each prospective project to determine whether it is one she is willing to endorse. *Id.*, at 185a. She will consult with clients to discuss "their unique stories as source material." *Id.*, at 186a. And she will produce a final story for each couple using her own words and her own "original artwork." *Id.*, at 182a–183a. Of course, Ms. Smith's speech may combine with the couple's in the final product. But for purposes of the First Amendment that changes nothing. An individual "does not forfeit constitutional protection simply by combining multifarious voices" in a single communication. *Hurley*, 515 U. S., at 569.

8

*303 Creative LLC*, 2023 U.S. LEXIS 2794 at *5-6 (emphasis in the original). Here, Plaintiffs are not using their own words, or expressing their own opinions or views when filling out the advance ballot application. They are not telling unique stories. They are filling in bare-bones information about the mail recipient that is neither "informative" nor "persuasive." App. Vol. III at 653. This is not protected speech.

Plaintiffs here admit, and the District Court found as a finding of fact, that Plaintiffs "relied on a vendor, Catalist, LLC, to provide the voter registration data." App. Vol. III at 634. To the extent filling in a government form is speech at all, the speaker would be Catalist, who filled in the form with raw biographical data. Alternatively, the voter, for whom the form was filled out and who adopts the form as his or her own, is the speaker. But the speaker is not Plaintiffs, who use none of their "own words" in filling out the form.

**II. EVEN IF PLAINTIFFS' ACTIONS WERE TO BE CONSIDERED SPEECH, THE FIRST AMENDMENT DOES NOT GUARANTEE THE RIGHT OF INDIVIDUALS "TO SELECT WHAT THEY BELIEVE TO BE THE MOST EFFECTIVE MEANS" TO CONVEY THEIR MESSAGE.**

In *Meyer*, the plaintiffs challenged the constitutionality of a statute that prohibited the use of paid circulators to obtain signatures on initiative petitions. After explaining that the "circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change," *Meyer*, 486 U.S. at 421, the Court held that this "type of interactive communication concerning political change . . . is appropriately

described as 'core political speech,'" *id.* at 421-22. The fact that "'more burdensome' avenues of communication" are available "does not relieve [the] burden on First Amendment expression," *id.* at 424. In that vein, the Court held, "[t]he First Amendment protects [plaintiffs'] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.*

*Meyer*'s discussion of "the most effective means" was done purely in the context of highlighting the speaker's ability to express core political speech. *Meyer* cannot possibly be read so broadly as to create a First Amendment right to all ancillary actions that may support core political speech. Nor should a speaker enjoy a First Amendment right of protection of all actions that may help guarantee effectiveness of the speech. In this case, the First Amendment cannot insulate whatever conduct an individual deems best suited to effectively convey a message in the election context from the state's powers under the Elections Clause. Such an interpretation would undermine the Supreme Court's directive that states are endowed with extraordinarily substantial authority under the Elections Clause to regulate their elections. *See Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."); *Storer v. Brown,* 415 U.S. 724, 730 (1974) ( "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort

10

of order, rather than chaos, is to accompany the democratic processes.")).  Indeed, if individuals could circumvent the mechanics of election regulations and controls just because those restrictions were inconsistent with the purportedly "most effective" means of pursuing an electoral-related outcome, the state's essential Constitutional authority in this area would be improperly curtailed.

A federal district court in Pennsylvania already has rejected such an overzealous interpretation of *Meyer*, namely that individuals have a First Amendment right to the "most effective means" of speech.  The court properly confined *Meyer* to actual speech:

> There is language in *Meyer* suggesting that the First Amendment protects the right of individuals "to select what they believe to be the most effective means" to convey their message. *Meyer*, 486 U.S. at 424. This language, however, must be read in context. The Colorado statute prohibiting the use of paid petition circulators had the "inevitable effect" of restricting "direct one-on-one communication," which the Supreme Court characterized as "the most effective, fundamental, and perhaps economical avenue of political discourse." *Id.* at 423-424. The reasoning employed in Meyer does not support the idea that Project Vote has an unqualified First Amendment right to choose the compensation system that it believes to be "the most effective way" to motivate its canvassers. Docket No. 77-1 at 8, ¶ 24.

*Project Vote v. Kelly*, 805 F. Supp. 2d 152, 179-180 (W.D. Pa. 2011).  As the district court pointed out, the Colorado statute in *Meyer* blocked all meaningful speech, unlike the Pennsylvania statute:

> The problem with the Colorado statute challenged in Meyer was that it completely foreclosed an entire "channel of communication." *Nixon v.*

11

> *Shrink Missouri Government PAC*, 528 U.S. 377, 398, n. 1, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (Stevens, J., concurring). It was that "channel of communication" (i.e., "direct one-on-one communication") that was deemed to be "the most effective means" available to initiative proponents to express their message. *Meyer*, 486 U.S. at 424. Unlike the statute at issue in *Meyer*, § 1713(a) does not have the "inevitable effect" of preventing the Plaintiffs from engaging in "direct one-on-one communication." *Id.* at 423-424.

*Id.*

Here, there is no channel of communication between Plaintiffs and the potential voter that is blocked. The challenged law's only restriction is on pre-populating portions of the advance ballot application. Plaintiffs are still free to write letters. Plaintiffs can still send blank applications to potential voters. What *Meyer* was concerned with – "an entire 'channel of communication'" – is not in jeopardy here at all. Holding that the act of pre-populating a form was protected speech under *Meyer* was error.

When the Fifth Circuit took up this issue in *Voting for Am., Inc. v. Andrade*, it also found that the effectiveness of a speaker's speech is not guaranteed by the First Amendment. 488 F. App'x 890, 897 (5th Cir. 2012). In that case, the plaintiffs "contend[ed] a First Amendment right not just to speak out or engage in 'expressive conduct' but also to succeed in their ultimate goal regardless of any other considerations." *Andrade*, 488 F. App'x at 897. The Fifth Circuit correctly rejected the argument:

12

> [T]he argument that Appellees' expressive activity, here the promotion of voter registration, is contingent on the "success" factor of *actually registering voters* is a novel interpretation of First Amendment doctrine. While the First Amendment protects the right to have and express political views, nowhere does it protect the right to ensure those views come to fruition.

*Id.* at 897 n. 12 (emphasis in the original).  Just as the appellees in *Andrade* do not have a right to ensure the success of their goals, neither do Plaintiffs here.

Several other district courts have rejected the District Court's reasoning too. In Tennessee, a district court correctly found that "the First Amendment does not entail a right to achieve the speaker's goals (no matter how laudable) or to seek to achieve them in any way the speaker desires." *Lichtenstein v. Hargett*, 489 F.Supp.3d 742, 772 (M.D. Tenn. 2020) (citing *Andrade*, 488 F. App'x at 897).  In Kentucky, a district court rejected an interpretation of the term "means" in *Meyer* that would allow plaintiffs to access otherwise restricted information on absentee voters because doing so would be the most effective way for plaintiffs to accomplish their campaign efforts.  *Sheldon v. Grimes*, 18 F. Supp.3d 854, 859-60 (E.D. Ky. 2014).

The District Court's ruling that any law that results in any perceived limitation on the effectiveness of a party's civic engagement efforts violates the First Amendment is wrong and against the weight of authority addressing the issue. The First Amendment protects speech and guarantees expression.  It does not protect actions that are not speech.  Nor does it protect actions that are not expressive

conduct. The District Court should be reversed. Filling out a form for a stranger is not protected by the First Amendment.

**CONCLUSION**

For the foregoing reasons, amicus respectfully requests that this Court reverse the District Court's order.


Dated: August 1, 2023

Respectfully submitted,


*s/ Charlotte M. Davis*
_____
Charlotte M. Davis
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
cdavis@publicinterestlegal.org

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(d), because it contains 3,335 words, less than half of the 14,000 words permitted for a principal brief of a party, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

The brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

Dated: August 1, 2023

*s/ Charlotte M. Davis*
_____

**CERTIFICATE OF DIGITAL SUBMISSION
AND PRIVACY REDACTIONS**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) that the ECF submission is an exact copy of those documents; and

(3) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Avast Business Antivirus, and according to the program is free of viruses.

*s/ Charlotte M. Davis*
_____

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2023, I electronically filed the foregoing using the Court's CM/ECF system, which in turn caused electronic notifications of such filing to be sent to all counsel of record.

I further certify that within 5 days of August 1, 2023, I will serve seven paper copies of the same by overnight delivery to the Court in accordance to 10th Cir. R. 29.2 and 31.5.

*s/ Charlotte M. Davis*

_____